Filed 5/1/20 (unmodified opn. attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| COAST COMMUNITY COLLEGE DISTRICT et al., | C080349 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 34-2014-80001842CUWMGDS) |
| COMMISSION ON STATE MANDATES, | |
| Defendant and Respondent; | |
| DEPARTMENT OF FINANCE, | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Real Party in Interest and Respondent. | |
| | [CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed in this case on April 3, 2020, be modified as follows:

On page 3, second full paragraph, last sentence, insert "54626, subdivision (a)" between "51025" and "55760" so that the sentence now reads:

"Pursuant to the parties' request, we will direct the trial court to remand the portions of the test claim based on regulations 51006, 51014, 51016, 51018, 51020, 51025, 54626, subdivision (a), 55760, 55825 through 55831, and the Handbook of Accreditation and Policy Manual to the Commission for further determination."

On page 45, second full paragraph, last sentence, delete "reimbursement by the state is required" and replace with "the Commission must decide whether the Community Colleges incurred any increased costs after July 1, 1980. (Gov. Code, § 17514.)" so that the sentence now reads:

"And, as we explain in part III *post*, the Commission must decide whether the Community Colleges incurred any increased costs after July 1, 1980. (Gov. Code, § 17514.)"

On page 50, first full paragraph, delete the last sentence and replace with the following:

"Because the Commission has not yet addressed this requirement for subvention, we will direct the trial court to remand this portion of the claim so the Commission may decide in the first instance whether the Community Colleges were required to incur any increased costs after July 1, 1980. (Gov. Code, § 17514.)"

In the Disposition, page 55, second full paragraph, insert "54626, subdivision (a)" between "51025" and "55760" so that the paragraph now reads:

"The trial court is directed to remand to the Commission for further determination the portions of the test claim based on Education Code sections 76300 through 76395, regulations 51006, 51014, 51016, 51018, 51020, 51025, 54626, subdivision (a), 55760, 55763, 55825 through 55831, and the Handbook of Accreditation and Policy Manual."

2

This modification changes the judgment.  (Cal. Rules of Court, rule 8.264(c)(2).)


The petition for rehearing is denied.


FOR THE COURT:


_____/S/_____
RAYE, P. J.


_____/S/_____
MAURO, J.


_____/S/_____
HOCH, J.

Filed 4/3/20 (unmodified version)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| COAST COMMUNITY COLLEGE DISTRICT et al., | C080349 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 34-2014-80001842CUWMGDS) |
| COMMISSION ON STATE MANDATES, | |
| Defendant and Respondent; | |
| DEPARTMENT OF FINANCE, Real Party in Interest and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Christopher E. Krueger, Judge. Affirmed in part and reversed in part.

Dannis Woliver Kelley, Christian M. Keiner, William B. Tunick, and Chelsea Olson Murphy for Plaintiffs and Appellants.

Camille S. Shelton for Defendant and Respondent.

Kamala D. Harris, Attorney General, Douglas J. Woods, Senior Assistant Attorney General, Tamar Pachter, Supervising Deputy Attorney General, and P. Patty Li, Deputy Attorney General for Real Party in Interest and Respondent.

1

Article XIII B, section 6, subdivision (a) of the California Constitution (Section 6) generally requires state "subvention," i.e., financial aid or reimbursement, when the Legislature or a state agency mandates that a local government entity provide a new program or a higher level of service. (*Hayes v. Commission on State Mandates* (1992) 11 Cal.App.4th 1564, 1577 (*Hayes*).) The Commission on State Mandates (the Commission) is responsible for determining whether a local entity is entitled to reimbursement from the state pursuant to Section 6. (*City of San Jose v. State of California* (1996) 45 Cal.App.4th 1802, 1807.) A local entity seeking reimbursement must file a claim with the Commission. (*Id.* at pp. 1807-1808.) Adjudication of the first claim, or test claim, regarding a particular statute or regulation governs subsequent claims based on the same statute or regulation. (*Ibid.*)

This case involves claims for subvention by community college districts pertaining to 27 Education Code sections and 141 regulations. The regulations include "minimum conditions" that, if satisfied, entitle the community college districts to receive state financial support. (Cal. Code Regs., tit. 5, former §§ 51000-51027.)[1] As to the minimum conditions, the Commission generally determined that reimbursement from the state is not required because, among other things, the state did not compel the community college districts to comply with the minimum conditions. Coast Community College District, North Orange County Community College District, San Mateo County Community College District, Santa Monica Community College District, and State Center Community College District (the Community Colleges) filed a petition for writ of mandate challenging the Commission's decision. The trial court denied the petition and entered judgment, and the Community Colleges appeal.

---

[1] For clarity, we will distinguish between statutes and title 5 regulations by using the words regulation or regulations when referencing a particular regulation section, e.g., regulation 51000.

2

We conclude the minimum condition regulations impose requirements on a community college district in connection with underlying programs legally compelled by the state. The Commission suggests the minimum conditions are not legally compelled because the Community Colleges are free to decline state aid, but that argument is inconsistent with the statutory scheme and the appellate record.

This conclusion does not end our analysis, however, because the Commission already identified some items for reimbursement, other items are not before us, and for some items it has not been established that remand is otherwise appropriate. Based on a detailed review of the statutes and regulations at issue, we will reverse the judgment with regard to regulations 51000, 51006, 51014, 51016, 51018, 51020, 51025, 54626, subdivision (a), 55825 through 55831, regulation 55760 in cases involving mistake, fraud, bad faith or incompetency, and the Handbook of Accreditation and Policy Manual. Pursuant to the parties' request, we will direct the trial court to remand the portions of the test claim based on regulations 51006, 51014, 51016, 51018, 51020, 51025, 55760, 55825 through 55831, and the Handbook of Accreditation and Policy Manual to the Commission for further determination.

However, we will affirm the judgment with regard to Education Code sections 66738, subdivision (b), 66741, 66743, 78210 through 78218, paragraphs 2, 4 and 5 of section 66740, the portion of regulation 51008 dealing with education master plans, regulations 51024, 54626, subdivisions (b) and (c), 55005, 55100, 51012, 55130, 55150, 55170, 55182, 55205 through 55219, 55300, 55316, 55316.5, 55320 through 55322, 55340, 55350, 55500 through 55534, 55600, 55602, 55602.5, 55603, 55605, 55607, 55620, 55630, 55752, 55753, 55753.5, 55758.5, 55761, 55764, 55800.5, 55805, 55806, 55807, 55808, 55809, 58102, 58107, 58108, 59404, the portion of regulation 55000 et seq. relating to community service classes, and pages A-1 to A-54 of the Chancellor's Program and Course Approval Handbook.

3

Moreover, we will reject the Community Colleges' claim with regard to regulations 51002, 51004, 51021, 51022, 51023, 51023.5, 51023.7 and 51027 because the Community Colleges do not dispute that the Commission already approved reimbursement of costs associated with those regulations. We will also reject the Community Colleges' challenges to the parameters and guidelines. The test claims based on regulation 51008 dealing with capital construction master plans and former regulations 51010 and 51026 were severed and considered in other matters; we will not consider the claim for subvention based on those test claims. In addition, we will direct the trial court to remand the test claim based on Education Code sections 76300 through 76395 and regulation 55763 to the Commission for determination.

BACKGROUND

The Los Rios Community College District submitted a test claim seeking subvention for costs associated with two Education Code sections and 22 regulations relating to requirements to prepare, publish and implement various policies, procedures and notices to students. About a week later, the Santa Monica Community College District submitted a test claim seeking subvention for costs associated with 76 Education Code sections and 160 regulations relating to minimum conditions for state aid.[2] We will refer to the Los Rios and Santa Monica Community College Districts as the claimants.

The two test claims, which were based in part on the same regulations, were consolidated and denominated the *Minimum Conditions for State Aid* test claim. The Commission subsequently consolidated a portion of a test claim filed by West Kern Community College District with the *Minimum Conditions for State Aid* test claim. It also severed the portion of the *Minimum Conditions for State Aid* test claim relating to

---

[2] We will discuss the version of the regulations in effect at the time the claimants filed their test claims, using the designation "former" in our discussion to refer to test claim regulations amended after the test claims were filed.

4

prohibition against discrimination in employment and programs for consideration with the test claim filed by West Kern Community College District, which it called the *Discrimination Complaint Procedures* test claim. In addition, the Commission severed the portion of the *Minimum Conditions for State Aid* test claim relating to Education Code sections 70902, subdivision (b)(2), 81820, 81821 and 81823 for consideration with a matter it referred to as the *Community College Construction* test claim.

The Commission adopted a statement of decision for the *Minimum Conditions for State Aid* test claim and subsequently adopted parameters and guidelines. The Community Colleges filed a petition for writ of mandate in the trial court challenging the statement of decision and the parameters and guidelines. The trial court denied the petition and entered judgment.

DISCUSSION

I

The Community Colleges argue the Commission erred in concluding that Education Code sections 70901, 70901.5 and 70902 and former regulations 51000 through 51027 were not state mandates. They disagree with the Commission's conclusion that community college districts were not compelled to implement the minimum conditions set forth in former regulations 51000 through 51027.

The state must reimburse a community college district for costs mandated by the state (Gov. Code, §§ 17519, 17561, subd. (a)), including increased costs a community college district is required to incur as a result of a statute or regulation mandating a new program or a higher level of service for an existing program. (Gov. Code, §§ 17514, 17516, 17519; *Hayes, supra*, 11 Cal.App.4th at p. 1581; see *City of Sacramento v. State of California* (1990) 50 Cal.3d 51, 67, fn. 11.) A " 'program' " carries out "the governmental function of providing services to the public" or refers to "laws which, to implement a state policy, impose unique requirements on local governments and do not apply generally to all residents and entities in the state." (*County of Los Angeles v. State*

5

*of California* (1987) 43 Cal.3d 46, 56.)  Whether a statute or regulation imposes a state mandate subject to reimbursement under Section 6 is a question of law which we independently review.  (*Department of Finance v. Commission on State Mandates* (2016) 1 Cal.5th 749, 762.)  With regard to the minimum conditions challenged in this case, the parties focus on the first aspect of the state mandate analysis, whether the state has legally or practically compelled the community college districts to comply with the minimum conditions.  (See *Department of Finance v. Commission on State Mandates* (*Kern High School Dist.*) (2003) 30 Cal.4th 727, 743, 748 (*Kern*).)  If we conclude the answer is yes, the parties ask that claims regarding the minimum conditions be remanded back to the Commission for consideration of the remainder of the mandate analysis, whether the minimum conditions involve a new program or higher level of service.

A

Education Code section 70901 delineates the duties and functions of the state Board of Governors of the California Community Colleges (state Board of Governors), the state entity that supervises community college districts.  Education Code section 70901, subdivision (b)(6)(A) requires the state Board of Governors to establish minimum conditions "entitling districts to receive state aid for support of community colleges."  In addition, Education Code section 70901.5 requires the state Board of Governors to establish procedures for the adoption of rules and regulations governing California community colleges.  Because the Community Colleges do not show how Education Code sections 70901 and 70901.5 require community college districts to engage in any activity, they have not established that those statutes constitute a state mandate.  (Cal. Rules of Court, rule 8.204(a)(1)(B); *People v. Freeman* (1994) 8 Cal.4th 450, 482, fn. 2 (*Freeman*) [a reviewing court need not discuss undeveloped claims].)

However, former regulation 51000 et seq. set forth the minimum conditions referenced in Education Code section 70901, and those state regulations require the governing boards of community college districts to adopt standards, policies and

6

procedures on a variety of topics.  As we will explain, the minimum condition regulations impose requirements on a community college district in connection with underlying programs legally compelled by the state.

The state specifies the mission and functions of California community colleges.  California community colleges "shall, as a primary mission, offer academic and vocational instruction at the lower division level for both younger and older students, including those persons returning to school."  (Ed. Code, § 66010.4, subd. (a)(1).)  The community colleges must offer instruction through the second year of college.  (*Ibid*.)  State law also requires the community colleges to provide remedial instruction, instruction in English as a second language, adult noncredit instruction, support services which help students succeed at the postsecondary level, and adult noncredit education curricula.  (*Id.*, subd. (a)(2)(A), (B).)  In addition, state law specifies that it is a mission of the community colleges "to advance California's economic growth and global competitiveness through education, training, and services that contribute to continuous work force improvement."  (*Id.*, subd. (a)(3).)

The state also imposes, through the minimum condition regulations, requirements a community college must satisfy in meeting its underlying legally-compelled functions.  For example, former regulation 51002 required a community college to establish standards of scholarship, including grading practices (former regulation 55751), standards for grade point averages (former regulation 55758.5), and procedures for the correction of grades (former regulation 55760).  Former regulation 51004 required a community college to adopt regulations regarding degrees and certificates.  Former regulation 51006 required a community college to adopt a resolution declaring an open course policy.  Former regulation 51014 required a community college to obtain state Board of Governors approval of any new college or educational center.  Former regulation 51016 required a community college to be accredited.  Regulation 51020 requires a community college to have stated objectives for its instructional program.  And

regulation 51021 requires a community college to establish a curriculum satisfying the aforementioned objectives, with the curriculum subject to state Chancellor approval. Moreover, while state law requires a community college to provide support services to help students succeed at the postsecondary level (Ed. Code, § 66010.4, subd. (a)(2)(A)), regulation 51018 requires a community college to provide a counseling program, including academic, career and personal counseling.

Compliance with the minimum condition regulations entitles a community college district to continue receiving state aid. (Ed. Code, §§ 66700, 70901, subd. (b)(6); Cal. Code Regs., tit. 5, former § 51000.) The regulations require the state Chancellor of the California Community Colleges to review community colleges to determine whether they have met the minimum conditions. (Cal. Code Regs., tit. 5, former § 51100, subd. (a).) If the state Chancellor determines a community college may not be in compliance with the minimum conditions, the state Chancellor shall request an official written response from the community college. (*Id.*, former § 51102, subd. (a).) The state Chancellor shall pursue one or more enforcement courses of action based on the gravity of the alleged noncompliance, such as accepting the response from the community college, requiring the community college to submit and adhere to a timetable for compliance, and/or withholding state aid with approval of the state Board of Governors. (*Id.*, subds. (b), (c).)

B

Reimbursement from the state is not required when a local agency or school district participates voluntarily in a program, i.e., participates without legal or practical compulsion. (*Department of Finance v. Commission on State Mandates* (2009) 170 Cal.App.4th 1355, 1365-1366; *City of Merced v. State of California* (1984) 153 Cal.App.3d 777, 782-784 (*City of Merced*).) Here, the Commission argues the minimum condition regulations do not amount to legal compulsion because satisfaction of the minimum conditions merely "entitles" a community college to receive state aid. The trial court agreed, addressing the question of legal compulsion by stating, "As in

8

*Kern*, the [trial] court agrees that [the Community Colleges] are not legally compelled to comply with the minimum conditions.  Instead, just as the school districts in *Kern* only had to comply with the notice and agenda requirements if they wanted program funds, [the Community Colleges] here only have to comply with the minimum conditions if they want to become entitled to receive state aid."  (Italics omitted.)

The Commission continues to rely on *Kern, supra,* 30 Cal.4th 727 in support of its contention that there is no legal compulsion.  *Kern* involved state statutes requiring certain school district councils and advisory committees to provide notice of meetings and post meeting agendas in connection with particular underlying programs.  (*Id.* at pp. 730-731.)  The Supreme Court said that in determining whether the notice and posting requirements were state mandates, the proper focus was not on whether the notice and posting requirements were compelled by the state, but instead whether the *underlying programs* were compelled.  (*Id.* at p. 743.)  In that case, because the school districts voluntarily participated in the underlying programs, the costs for the notice and posting requirements were not subject to subvention under a legal compulsion theory.  (*Id.* at pp. 743, 745.)

This case is different.  The notice and posting requirements in *Kern* applied to discrete programs in which school participation was voluntary, but here the minimum condition requirements apply to the underlying core functions of the community colleges, functions compelled by state law.  As we have explained, California community colleges are required to provide specified academic, vocational, and remedial instruction, along with support services.  (Ed. Code, § 66010.4.)  The minimum condition requirements direct the community college districts to take specific steps in fulfilling those legally-compelled core mission functions, including requirements pertaining to scholarship, degrees, courses, campuses, counseling, and curriculum.

*Kern* is also different because the costs associated with the requirements in that case were "modest."  (*Kern, supra,* 30 Cal.4th at p. 747)  Here, however, the record does

9

not establish that the costs to comply with the minimum conditions would be modest. Rather, the record shows that the statewide cost estimate for the portion of the test claims the Commission approved is over $27 million annually for fiscal years 2001 through 2012 and the Commission approved reimbursement for less than one-third of the test claim statutes and regulations, denying reimbursement of costs for all minimum condition regulations. (Cal. Code Regs., tit. 5, former § 51102, subds. (b), (c).) Moreover, although the claimants in *Kern* had experienced "a relatively minor diminution of program funds available to them for substantive program purposes" (*Kern,* at p. 748), here a community college risks loss of all state aid if it does not comply with the minimum condition regulations. (Cal. Code Regs., tit. 5, former § 51102, subds. (b), (c).)

The Commission suggests the minimum conditions are not legally compelled because the community colleges are free to decline state aid. But that argument is inconsistent with the statutory scheme and the appellate record. Education is a governmental function under California law. (*Long Beach Unified School Dist. v. State of California* (1990) 225 Cal.App.3d 155, 172.) Consistent with that function, the state legislature declared that "California must support an educational system that prepares all Californians for responsible citizenship and meaningful careers in a multicultural society[,]" determining that this requires a commitment "to make high-quality education available and affordable for every Californian." (Ed. Code, § 66002, subd. (f)(3).) To accomplish those goals, the Legislature found that California's system of higher education would need to expand. (*Id.*, subd. (f)(4).) That system includes not only the campuses of the University of California and the California State University system, but also the California community colleges. (Ed. Code, §§ 66010, subd. (a), 66010.4, subd. (a), 66700, 100450, subd. (b).) Under state law, those institutions "share goals designed to provide educational opportunity and success to the broadest possible range" of California citizens. (Ed. Code, § 66010.2.) And as provided in our state constitution, no college within the state's public school system shall be transferred from the public

school system or placed under the jurisdiction of any other authority. (Cal. Const., art. IX, § 6.) Consistent with those laws and legislative determinations, the state provides funding to the California community college districts to permit them to carry out their mission. (See Ed. Code, § 14000 ["The system of public school support should assure that state, local, and other funds are adequate for the support of a realistic funding level."].) "Since 1933, our [state] Constitution has provided that from state revenues there shall first be set apart the moneys to be applied by the state for the support of the public school system and institutions of higher education." (*California Teachers Assn. v. Hayes* (1992) 5 Cal.App.4th 1513, 1522; see Cal. Const., art. XVI, § 8.) The Legislature has declared that the California Constitution requires a specific minimum level of state General Fund revenues be guaranteed and applied for the support of community college districts. (Ed. Code, § 41200, subd. (b).) Moreover, as a result of article XIII A of the state Constitution, the state has assumed a greater share of the responsibility for funding the public school system. (*California Teachers Assn. v. Hayes,* at pp. 1526-1528.) Specifically, in the most recent year for which the appellate record in this case provides information, *more than half* of California community college funding came from the state general fund. In that same year, other funding sources, including federal funds, local funds, and student fees, provided significantly less support. Like public school districts in general, community college districts are dependent on state aid. (See *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1196.)

In *Kern*, the California Supreme Court further determined, as to one of the subject programs, that even if participation was legally compelled, the modest costs of the notice and posting requirements could be absorbed by the school districts because the "state's provision of program funding" satisfied "in advance" any requirement for reimbursement. (*Kern, supra*, 30 Cal.4th at p. 747; see *id.*, at p. 731.) But in this case, the appellate record does not establish that the costs to comply with the minimum

11

condition regulations are clearly satisfied "in advance" by existing state aid (except as we specifically discuss, *post*).

The trial court went into much greater depth discussing whether the minimum condition regulations amounted to "practical" compulsion, ultimately concluding that practical compulsion had not been shown. But because we conclude the programs underlying the minimum condition regulations were legally compelled, we need not consider whether the community college districts faced practical compulsion based on severe and certain penalties. (Cf. *Kern, supra*, 30 Cal.4th at pp. 731, 749-751.)

C

Although we have determined that the minimum condition regulations impose requirements on a community college district in connection with underlying programs legally compelled by the state, that does not end our analysis, because the Commission already identified some items for reimbursement, other items are not before us, and for some items it has not been established that remand is otherwise appropriate. Accordingly, we examine former regulations 51002 through 51027 in more detail to address which specific regulations require remand for further consideration by the Commission.

1. Cal. Code Regs., tit. 5, former § 51002 - Standards of Scholarship

This regulation provided, "The governing board of a community college district shall: [¶] (a) adopt regulations consistent with the standards of scholarship contained in [former regulation 55750 et seq.]; [¶] (b) file a copy of its regulations, and any amendments thereto, with the Chancellor; and [¶] (c) substantially comply with its regulations and the regulations of the [state] Board of Governors pertaining to standards of scholarship."

The Commission says it approved reimbursement for activities required by former regulation 51002 based on mandates imposed by former regulation 55750 et seq. It is true that the Commission approved reimbursement of a number of costs associated with

12

former regulation 55750 et seq., relating to standards of scholarship. The Community Colleges' appellate reply brief does not dispute that the Commission approved reimbursement for those costs and does not identify former regulation 51002 costs for which subvention has not been approved. Accordingly, we reject the claim with regard to former regulation 51002.

2.    Cal. Code Regs., tit. 5, former § 51004 - Degrees and Certificates

This regulation provided, "The governing board of a community college district shall: [¶] (a) adopt regulations consistent with regulations contained in [former regulation 55800 et seq.]; [¶] (b) file a copy of its regulations and any amendments thereto with the Chancellor; and [¶] (c) substantially comply with its regulations and the regulations of the [state] Board of Governors pertaining to degrees and certificates."

The Commission says it approved reimbursement of costs associated with former regulation 51004. The Commission approved reimbursement of costs associated with degrees and certificates. We reject the claim by the Community Colleges because their appellate reply brief does not identify former regulation 51004 costs for which the Commission has not approved reimbursement.

3.    Cal. Code Regs., tit. 5, former § 51006 - Open Courses

This regulation required the governing board of a community college district to adopt a policy relating to open access to qualified persons, publish the policy, and file a copy of the policy with the Chancellor. The Commission denied the claim based on this regulation because it found the regulation did not impose a state mandated activity. But the regulatory requirement to adopt an open-access policy is connected to an underlying legally-compelled community college mission. (Ed. Code, § 66010.2, subd. (a) [community colleges shall provide access to education to all qualified Californians].) Given our conclusion, the parties agree the matter should be remanded back to the Commission for further determination. We will direct the trial court to remand this portion of the claim to the Commission.

13

4. Cal. Code Regs., tit. 5, § 51008 - Comprehensive Plan

This regulation provides, "(a) The governing board of a community college district shall establish policies for, and approve, comprehensive or master plans which include academic master plans and long range master plans for facilities. The content of such plans shall be locally determined, except that the plans shall also address planning requirements specified by the [state] Board of Governors. [¶] (b) Such plans, as well as any annual updates or changes to such plans, shall be submitted to the Chancellor's Office for review and approval in accordance with Section 70901(b)(9) of the Education Code and with regulations of the [state] Board of Governors pertaining to such plans."

Santa Monica Community College District sought reimbursement for capital construction master plan costs incurred under Education Code sections 81820, 81821 and 81823. The Commission severed that portion of Santa Monica Community College District's test claim and did not consider it as part of the consolidated *Minimum Conditions for State Aid* test claim. The petition for writ of mandate underlying the judgment that the Community Colleges challenge here relates only to the *Minimum Conditions for State Aid* test claim. Thus, the Commission's decision on the test claim for capital construction master plan costs is not before us and we do not consider whether subvention is required with regard to capital construction master plan costs.

Santa Monica Community College District also sought subvention for costs associated with educational master plans, in particular former regulations 55401 through 55404. The Commission denied the claim on the ground that the test claim regulations existed prior to 1975.

Subvention is limited to increased costs a community college district is required to incur as a result of a statute enacted on or after January 1, 1975, or a regulation issued by a state agency or board implementing a statute enacted on or after January 1, 1975. (Gov. Code, §§ 17514, 17516, 17519) The state is not required to provide subvention of funds for expenditures pursuant to a pre-1975 statute. (*Los Angeles Unified School Dist. v.*

14

*State of California* (1991) 229 Cal.App.3d 552, 555.) Although a nonsubstantive amendment was made in 1977 to former regulation 55405, replacing the pronoun "he" with "the Chancellor," as acknowledged in the test claim filed by Santa Monica Community College District, former regulations 55401 through 55405 remained substantively the same since 1971.

Nevertheless, the Community Colleges contend the addition of former regulations 51000 and 51008 after 1975 made the consequences of noncompliance with the prior planning requirements certain and severe, thereby creating a new and higher level of mandated activity. But the duty of the governing board of a community college district to establish policies for and approve current and long-range academic plans and submit master plans to the board of governors for review and approval, currently found in Education Code section 70902, subdivision (b)(1), has existed since at least 1969. (Stats. 1969, ch. 1026, § 3 [Ed. Code, former § 1010.3].) Accordingly, subvention by the state is not required for the regulations relating to educational master plans because they implemented a pre-1975 statute, and we reject the appellate claim relating to regulation 51008. We also reject the perfunctory claims made based on the same timing argument with regard to regulations 55005, 55100, 55130, 55150, 55800.5, 55805, 55806 and 55809, relating to curriculum and instruction. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Freeman, supra,* 8 Cal.4th at p. 482, fn. 2.)

     5.    Cal. Code Regs., tit. 5, former § 51010 - Equal Employment Opportunity

This regulation required the governing board of a community college district to take certain actions with regard to equal employment opportunity. The Commission severed the portion of the consolidated *Minimum Conditions for State Aid* test claim relating to equal employment opportunity programs for consideration with the *Discrimination Complaint Procedures* test claim. The decision in the *Discrimination Complaint Procedures* test claim is not before us.

6. Cal. Code Regs., tit. 5, § 51012 - Student Fees

This regulation provides, "The governing board of a community college district may only establish such mandatory student fees as it is expressly authorized to establish by law."

Citing regulation 51012, Santa Monica Community College District sought reimbursement of costs to establish and implement policies and procedures to ensure that the collection of student fees complied with Education Code former sections 76300 through 76395. Education Code former section 76300 described the calculation of the fee the governing board of each community college must charge each student, who was exempt from the fee, and who may be exempt from the fee. (Stats. 2002, ch. 450, § 3.) Education Code former section 76350 et seq. authorized fees which the governing board of a community college district may charge certain students for items such as parking services and prohibited the establishment of a fee for certain students. (Stats. 1993, ch. 8, § 34.)

The Commission concluded that regulation 51012 did not impose any state mandated activities because it did not require a community college district to do anything and the claimants did not plead any statutes or regulations requiring the establishment of any student fees. We agree with the Commission that regulation 51012 does not require the community college districts to take any particular action, it merely references what is already authorized by law.

However, the Commission failed to consider the Santa Monica Community College District claim that subvention was required for costs associated with Education Code former sections 76300 through 76395. The Commission must decide that issue in the first instance. (Gov. Code, § 17551, subd. (a); *Lucia Mar Unified School Dist. v. Honig* (1988) 44 Cal.3d 830, 837 (*Lucia Mar*).) The Commission points out that Los Rios Community College District filed a test claim in 2000 relating to Education Code former section 76300 and its implementing regulations (Cal. Code Regs., tit. 5, former

16

§§ 58500-58508) and the Commission approved reimbursement of some costs associated with Education Code former section 76300 and former regulations 58501, 58502 and 58503.**3** But the Commission does not assert that it approved the claimants' request for reimbursement of Education Code former section 76300 costs in this case. In addition, the 2000 test claim did not decide whether subvention is required for Education Code former section 76350 et seq. costs. We will direct that these portions of the claim be remanded to the Commission.

7.　　Cal. Code Regs., tit. 5, former § 51014 - Approval of New Colleges and Educational Centers

This regulation provided, "(a) The governing board of a community college district planning the formation of a new college or educational center shall obtain approval for such college or educational center from the [state] Board of Governors. Approval shall be obtained before classes begin at the new college or educational center. [¶] (b) The provisions of [former regulation 55825 et seq.] shall govern the approval of new colleges and educational centers."

The Commission denied the claim for subvention based on former regulation 51014, noting that the regulations referenced therein, former regulations 55825 through 55831, did not impose state mandated activities because the decision to create a new college or education center, which triggered any activities required by those regulations, was left to the discretion of a community college district.

---

**3** We grant the request for judicial notice of the statement of decision in that matter. (Evid. Code, §§ 452, subd. (c), 459; *Arce v. Kaiser Foundation Health Plan, Inc*. (2010) 181 Cal.App.4th 471, 484 [taking judicial notice of decision by the Department of Managed Health Care, but not the truth of factual findings made in that decision]; *Wise v. Pacific Gas & Electric Co.* (1999) 77 Cal.App.4th 287, 297 [taking judicial notice of decision by Public Utilities Commission].) We otherwise deny the Commission's request for judicial notice.

But the Legislature has declared that California's system of higher education would need to expand (Ed. Code, § 66002, subd. (f)(4)), that it is in the state's interest to provide assistance to community colleges for the construction of facilities (Ed. Code, § 81800, subd. (b)), that California's economic and social prosperity relies on a higher education system that keeps pace with California's growth (Ed. Code, §§ 100110, subd. (a), 100450, subd. (a)), and that there is a need to provide adequate community college facilities "to accommodate community college students resulting from growth in population and from legislative policies expressed through implementation of the Master Plan for Higher Education." (Ed. Code, § 81800, subd. (b), see *id.*, § 100450.) The Legislature also determined that California community colleges can "help fill the gaps" in the higher education system by granting baccalaureate degrees in certain areas to "meet a growing demand for a skilled workforce." (Stats. 2014, ch. 747, § 1.) Accordingly, the Legislature has provided aid to California community colleges to meet their capital outlay financing needs. (See, e.g., Ed. Code, §§ 100110, 100120, 100450, 100457, 100460, 100510.) Former regulation 51014 required the governing board of a community college district to comply with the standards in former regulations 55829 through 55831 and to obtain the Board of Governor's approval when planning a new college or education center. (Cal. Code Regs., tit. 5, former §§ 51014, 55825.) The former regulation required that a plan for a new college or educational center be directed to the educational needs of the community, that it consider circumstances such as unmet need and labor market requirements, and that it identify the most effective and equitable delivery system for programs and services. (Cal. Code Regs., tit. 5, former §§ 55829, 55830, 55831.)

Former regulations 51014 and 55825 et seq. imposed requirements in connection with a community college's underlying legally-compelled mission to address a growing student population. We will direct that this portion of the claim be remanded to the Commission for further determination.

18

8. Cal. Code Regs., tit. 5, former § 51016 - Accreditation

This regulation provided, "Each community college within a district shall be an accredited institution. The Accrediting Commission for Community and Junior Colleges [(ACCJC)] shall determine accreditation."

The Commission denied the test claim based on former regulation 51016. For reasons we have explained, this minimum condition regulation imposed requirements in connection with a community college's underlying legally-compelled mission to provide quality education. (Ed. Code, §§ 66010.2, subd. (b) [community colleges shall provide quality teaching and programs], 66050 [community colleges must recognize that quality teaching is the core ingredient of the undergraduate educational experience], 66052 [encouraging policies that enhance the quality of teaching in higher education], 66071 [encouraging institutions of higher education to develop and use mechanisms to assess teaching and student learning and the achievement of state higher education goals for quality].) We will direct the trial court to remand this portion of the claim to the Commission for further determination.

Santa Monica Community College District also sought reimbursement for costs to establish and implement procedures to comply with the accreditation standards and requirements in the Handbook of Accreditation and Policy Manual, published by ACCJC. The Commission denied the claim because it said ACCJC was not a government agency and the Handbook of Accreditation and Policy Manual was not an executive order. The Community Colleges urge that the Commission erred in denying the claim.

While the Handbook of Accreditation and Policy Manual is not a statute or regulation, by requiring community colleges to be accredited by ACCJC, former regulation 51016 imposed on the Community Colleges the responsibility to satisfy requirements for accreditation established by ACCJC. It appears undisputed that those requirements were set forth in ACCJC's Handbook of Accreditation and Policy Manual. Because the state required community colleges to comply with the accreditation

19

requirements and standards established by ACCJC, we will direct the trial court to remand this portion of the claim to the Commission for further determination.

9.      Cal. Code Regs., tit. 5, § 51018 - Counseling Programs

This regulation provides, "(a) The governing board of a community college district shall adopt regulations and procedures consistent with the provisions of this [regulation]. A copy of district regulations and procedures, as well as any amendments, shall be filed with the Chancellor's Office.  [¶]  (b) The governing board of a community college district shall provide and publicize an organized and functioning counseling program in each college within the district."  The regulation lists the requirements for counseling programs and states that certain counseling services shall be provided to certain students.

The Commission says it approved for reimbursement costs associated with complying with Education Code section 66736, including costs for the adoption of policies and procedures relating to counseling services for transfer students.  Education Code section 66736 provides that each community college district governing board must ensure that its college or colleges maintain student transfer counseling centers or other counseling and student services designed and implemented to affirmatively seek out, counsel, advise and monitor the progress of potential and identified community college transfer students.  However, the requirements of regulation 51018 are not limited to counseling programs for transfer students.  As we explained, state law requires a community college to provide support services to help students succeed at the postsecondary level (Ed. Code, § 66010.4, subd. (a)(2)(A)), and regulation 51018 requires a community college to provide a counseling program, including academic, career and personal counseling.  Accordingly, regulation 51018 imposed requirements pertaining to legally-compelled underlying programs.  We will direct the trial court to remand this portion of the claim to the Commission for further determination.

20

10.     Cal. Code Regs., tit. 5, § 51020 - Objectives

This regulation provides, "Each community college shall have stated objectives for its instructional program and for the functions which it undertakes to perform."

The Commission denied the test claim based on regulation 51020. For reasons we have explained, this minimum condition regulation imposed requirements in connection with a community college's underlying legally-compelled mission of instruction. We will direct the trial court to remand this portion of the claim to the Commission for further determination.

11.     Cal. Code Regs., tit. 5, § 51021 - Curriculum

This regulation provides, "Each community college shall establish such programs of education and courses as will permit the realization of the objectives and functions of the community college. All courses shall be approved by the Chancellor in the manner provided in [former regulation 55000 et seq.]."

The Commission approved reimbursement of costs pursuant to Education Code section 70902, subdivision (b)(2), which requires the governing board of each community college district to establish policies for and approve courses of instruction and educational programs. We reject the appellate claim with regard to regulation 51021 because it is undisputed that the Commission already approved reimbursement for costs related to that regulation.

12.     Cal. Code Regs., tit. 5, former § 51022 - Instructional Programs

This regulation provided, "(a) The governing board of each community college district shall, no later than July 1, 1984, develop, file with the Chancellor, and carry out its policies for the establishment, modification, or discontinuance of courses or programs. Such policies shall incorporate statutory responsibilities regarding vocational or occupational training program review as specified in section 78016 of the Education Code.  [¶]  (b) The governing board of each community college district shall, no later than July 1, 1984, develop, file with the Chancellor, and carry out its policies and

21

procedures to provide that its courses and programs are articulated with proximate four-year colleges and high schools."

The Commission says it approved for reimbursement activities relating to former regulation 51022, but denied activities relating to former regulation 55753.5 because former regulation 55753.5 did not require the governing board of a community college district to do anything. Former regulation 55753.5, subdivision (b) provided that the governing board of a community college district *may* adopt policies to permit articulated high school courses to be applied to community college requirements. Because the Community Colleges do not establish that any costs related to former regulation 51022 have not been approved for reimbursement and do not dispute that costs associated with former regulation 55753.5 are not subject to subvention by the state, we reject the claim with regard to those regulations.

13. Cal. Code Regs., tit. 5, former § 51023 (Faculty) and Cal. Code Regs., tit. 5, §§ 51023.5 (Staff) and 51023.7 (Students) - Participation in Governance

Former regulation 51023 provided, "The governing board of a community college district shall: [¶] (a) adopt a policy statement on academic freedom which shall be made available to faculty and be filed with the Chancellor; [¶] (b) adopt procedures which are consistent with the provisions of [regulations] 53200-53206,[4] regarding the role of academic senates and faculty councils and are filed with the Chancellor; [¶] (c) substantially comply with district adopted policy and procedures adopted pursuant to Subsections (a) and (b)."

---

[4] Costs associated with former regulations 53000 through 53034, relating to equal employment opportunity programs, were severed from the *Minimum Conditions for State Aid* test claim and were to be decided as part of the *Discrimination Complaint Procedures* test claim.

22

Regulation 51023.5 provides, "(a) The governing board of a community college district shall adopt policies and procedures that provide district and college staff the opportunity to participate effectively in district and college governance." The regulation describes what such policies and procedures must include and requires staff participation in the formulation and development of the policies and procedures.

In addition, regulation 51023.7 provides, "(a) The governing board of a community college district shall adopt policies and procedures that provide students the opportunity to participate effectively in district and college governance." The regulation requires that students be provided an opportunity to participate in the formulation and development of district and college policies and procedures that have significant effect on students.

The Commission concluded that the following activities constituted a state mandated new program or higher level of service: (1) establishing procedures pursuant to Education Code section 70902, subdivision (b)(7) "to ensure faculty, staff, and students the opportunity to express their opinions at the campus level, to ensure that these opinions are given every reasonable consideration, and to ensure the right of academic senates to assume primary responsibility for making recommendations in the areas of curriculum and academic standards" and (2) participating in the consultation process established by the state Board of Governors for the development and review of policy proposals pursuant to Education Code section 70901, subdivision (e). The Community Colleges do not establish that any costs related to former regulation 51023 or regulations 51023.5 or 51023.7 were not approved for reimbursement. Accordingly, we reject the claim with regard to those regulations.

14.     Cal. Code Regs., tit. 5, former § 51024 - Matriculation Services

This regulation provided, "The governing board of each community college district shall: [¶] (a) adopt and submit to the Chancellor a matriculation plan as required under [former regulation] 55510; [¶] (b) evaluate its matriculation program and

23

participate in statewide evaluation activities as required under [former regulation] 55512(c); [¶] (c) provide matriculation services to its students in accordance with [former regulations] 55520 and 55521; [¶] (d) establish procedures for waivers and appeals in connection with its matriculation program in a manner consistent with [former regulation] 55534; and [¶] (e) substantially comply with all other provisions of [former regulation 55500 et seq.]." Former regulations 55510, 55512, 55520 and 55534 set forth various requirements for community college districts.

Santa Monica Community College District sought subvention for costs of complying with the Education Code former sections 78210 through 78218 and former regulations 51024 and 55500 through 55534. The state Board of Governors adopted former regulations 51024 and 55500 et seq. pursuant, in part, to Education Code former sections 78210 through 78218, known as the Seymour-Campbell Matriculation Act of 1986. (Gov. Code, § 11349, subds. (b), (e); Notes to Cal. Code Regs., tit. 5, former §§ 51024, 55500-55534.) The Commission denied the claim. For reasons we have explained, former regulation 51024 imposed requirements on the Community Colleges pertaining to underlying legally-compelled programs. Nevertheless, the Seymour-Campbell Matriculation Act of 1986 was operative only if funds were specifically appropriated for purposes of that Act. (Stats. 1986, ch. 1467, § 1 [Ed. Code, former § 78218].) Education Code former section 78211.5 provided that any college or district receiving funding under the Act was bound to carry out its provisions only for the period during which funding was received pursuant to the Act. (Stats. 1986, ch. 1467, § 1.) Former regulation 55500, subdivision (b) provided that the requirements of former regulation 55500 et seq. applied only to districts which received funds pursuant to Education Code former section 78216 for the period of time during which such funds were received. Thus, the state was obligated to provide funding for any activities it required a community college district to undertake pursuant to the Seymour-Campbell

24

Matriculation Act of 1986, and the Community Colleges do not show that further reimbursement is required under Section 6. (*Kern, supra*, 30 Cal.4th at pp. 746-748.)

15. Cal. Code Regs., tit. 5, former § 51025 - Full-Time/Part-Time Faculty

This regulation provided, "This [regulation] relates to and should be read in conjunction with [regulation 53300[et seq.]. [¶] (a) If a district's full-time faculty percentage . . . is less than 75 percent, the following shall apply: [¶] (1) For growth revenues received related to increases in credit FTES . . . , the district shall increase the base full-time faculty obligation . . . by the Fall term of the succeeding fiscal year . . . . [¶] . . . [¶] (2) Districts which . . . had a full-time faculty percentage of 67 percent or greater, but less than 75 percent shall apply up to 33 percent of their program improvement allocation . . . as necessary to reach the 75 percent standard . . . . [¶] (3) Districts which . . . had a full-time faculty percentage of less than 67 percent shall apply up to 40 percent of their program improvement allocation . . . as necessary to reach the 75 percent standard . . . . [¶] (4) For program improvement funds identified in Subsection (a)(2) or (3), as appropriate, the district shall increase the number of full-time faculty, by the Fall term of the succeeding fiscal year, by the quotient of the applicable program improvement funds divided by the statewide average replacement cost, rounded down to the nearest whole number. [¶] . . . [¶] (c) On or before January 31 of each year, the Chancellor shall determine . . . the extent to which each district, by the Fall term of that year, has maintained or hired the number of additional full-time faculty determined pursuant to Subsection (a) for the prior fiscal year. To the extent that the number of full-time faculty has not been maintained or additional full-time faculty have not been retained, the Chancellor shall reduce the district's revenue for the current fiscal year by an amount equal to the average replacement cost for the prior fiscal year times the deficiency in the number of full-time faculty. To the extent a district hires the additional full-time faculty in subsequent fiscal years, the reductions made to the district's revenue shall be restored. . . ."

25

Education Code section 87482.7, subdivision (a) requires the board of governors to adopt regulations that establish minimum standards regarding the percentage of hours of credit instruction that shall be taught by full-time instructors, pursuant to Education Code section 70901, subdivision (b)(6). The state Board of Governors adopted former regulation 51025 pursuant, in part, to Education Code sections 84750 and 87482.7.[5] (Gov. Code, § 11349, subds. (b), (e); Note to Cal. Code Regs., tit. 5, former § 51025.) Although the trial court indicated otherwise, former regulation 51025 required a community college district to maintain a full-time faculty percentage of 75 percent. This is established by the regulatory scheme. Regulation 53300 says regulation 51025 concerned "the proportion of full-time and part-time faculty to be employed by community colleges." Regulations 53312 and 53314 also indicate that the 75 percent standard is mandatory. Regulation 53312, subdivision (a) states, "The Chancellor shall compute the number of full-time faculty which each district is to secure in accordance with [regulations] 51025 and 53308 . . . ." Regulation 53314 provides, "By the Spring term of each year, the Chancellor shall report to districts the estimated number of full-time faculty each district must secure by the following Fall term . . . ." Failure to comply with the 75 percent standard resulted in reduction of a community college district's revenue until compliance is achieved. (Cal. Code Regs., tit. 5, former § 51025, subd. (c).)

---

[5] The Commission cites to Education Code section 87482.6. However, former regulation 51025 was not adopted pursuant to that statute. (Note to Cal. Code Regs., tit. 5, former § 51025.) Education Code section 87482.6, subdivision (a) provides that a community college district which does not meet the 75 percent standard shall apply a percentage of its program improvement allocation as necessary to reach the 75 percent standard. And if the district "chooses instead not to improve its percentage, the board of governors shall withhold" a percentage of the district's program improvement allocation. Former regulation 51025 did not contain the "chooses . . . not to improve its percentage" language found in Education Code section 87482.6.

26

The Commission denied the test claim based on former regulation 51025. For the reasons we have explained, the regulation imposed requirements pertaining to underlying legally-compelled programs for instruction. We will direct the trial court to remand this portion of the claim to the Commission for further determination.

16.    Cal. Code Regs., tit. 5, former § 51026 - Student Equity

This regulation provided, "In accordance with the provisions of [former regulation] 54220, the governing board of a community college district shall adopt a student equity plan."

The Commission decided the claim relating to former regulation 51026 in the *Discrimination Complaint Procedures* test claim. The decision in the *Discrimination Complaint Procedures* test claim is not before us.

17.    Cal. Code Regs., tit. 5, § 51027 - Transfer Centers: Minimum Program
           Standards; Education Code sections 66738, 66740, 66741 and 66743

This regulation provides, "(a) The governing board of each community college district shall recognize transfer as one of its primary missions, and shall place priority emphasis on the preparation and transfer of underrepresented students, including African-American, Chicano/Latino, American Indian, disabled, low-income and other students historically and currently underrepresented in the transfer process.  [¶]  (b) Each community college district governing board shall direct the development and adoption of a transfer center plan describing the activities of the transfer center and the services to be provided to students, incorporating the provisions established in the standards outlined below." The regulation sets forth the requirements for transfer center plans, services which community college districts must provide, and other duties in relation to transfers.

Santa Monica Community College District sought reimbursement for costs incurred pursuant to Education Code sections 66720 through 66723, 66730 through 66744, and 71027, along with regulation 51027. The Commission rejected the claim in part, but approved reimbursement for a number of costs relating to transfer centers. The

27

Community Colleges do not identify any unapproved costs requiring subvention in relation to regulation 51027. Accordingly, we reject their claim with regard to regulation 51027. The Community Colleges contend instead that the Commission erred in concluding that the requirements relating to formal systemwide articulation agreements and transfer agreement programs in Education Code section 66738 were not state mandates.

Education Code section 66738 provides, "(a) The governing board of each public postsecondary education segment shall be accountable for the development and implementation of formal systemwide articulation agreements and transfer agreement programs, including those for general education or a transfer core curriculum, and other appropriate procedures to support and enhance the transfer function. [¶] (b) The elements in a comprehensive transfer system shall include, but not be limited to, the following: [¶] (1) Enrollment and resource planning; intersegmental faculty curricular efforts. [¶] (2) Coordinated counseling. [¶] (3) Financial aid and transfer services. [¶] (4) Transfer articulation agreements and programs. [¶] (5) Specific efforts to improve diversity. [¶] (6) Early outreach activities. [¶] (7) Expansion of current practices relating to concurrent enrollment of community college students in appropriate university courses. [¶] (8) Centers. [¶] (c) The governing board of each segment shall expand existing practices related to concurrent enrollment, in which community college students are provided the opportunity to take courses at University of California and California State University campuses, as space is available; and to expand opportunities for potential transfer students to participate in activities that familiarize them with the university campus."

The Commission concluded that Education Code section 66738, subdivisions (a) and (c) imposed state mandated activities and approved for reimbursement costs associated with those subdivisions, but not subdivision (b). The Commission reasoned that subdivision (b) costs were not reimbursable because community college districts are

28

not required to develop a *comprehensive* transfer system. We agree with the Commission.

Certainly, the law requires community college districts to maintain an effective transfer system. Education Code section 66738 was enacted as part of Senate Bill No. 121 (1991-1992 Reg. Sess.) in 1991. In enacting the statute, the Legislature declared that "[e]ach community college district should ensure that its colleges have full development of a viable and efficient transfer system which includes transfer agreement programs, centers, and internal coordination of all counseling and student service efforts aimed at ensuring adequate student information, student assistance, and monitoring of progress toward each student's goal." (Stats.1991, ch. 1188, § 1.) Pursuant to Education Code section 66730 et seq., California community colleges are part of the state's mission of maintaining "a healthy and expanded student transfer system." (Ed. Code, § 66730, subd. (a); see *id.*, §§66731-66738, 66739.6.) The governing boards of the University of California, California State University and California community colleges are tasked to "design, adopt, and implement policies intended to facilitate successful movement of students from community colleges through the University of California and the California State University." (*Id.*, § 66732.) Those segments of the public higher education system "are expected to develop new programs of outreach, recruitment, and cooperation . . . to facilitate the successful transfer of students between the community colleges and the universities." (*Id.*, § 66737.)

Nevertheless, the Community Colleges have not identified a requirement that they adopt any of the specific elements articulated in Education Code section 66738, subdivision (b). Accordingly, we reject this portion of the argument by the Community Colleges.

The Community Colleges also argue the Commission erred in concluding that Education Code section 66740 does not impose any requirements on community college districts.

29

Because the Commission addressed Education Code section 66740 by paragraphs, we insert paragraph numbers in our quote of the section for ease of reference. That section provides, "[1] Each department, school, and major in the University of California and California State University shall develop, in conjunction with community college faculty in appropriate and associated departments, discipline-specific articulation agreements and transfer program agreements for those majors that have lower division prerequisites. Faculty from the community colleges and university campuses shall participate in discipline-specific curriculum development to coordinate course content and expected levels of student competency. [¶] [2] Where specific majors are impacted or over-subscribed, the prescribed course of study and minimum grade point average required for consideration for upper division admission to all of these majors shall be made readily available to community college counselors, faculty, and students on an annual basis. In cases where the prescribed course of study is altered by the university department, notice of the modification shall be communicated to appropriate community college faculty and counselors at least one year prior to the deadline for application to that major and implementation by the department responsible for teaching that major. [¶] [3] Community college districts, in conjunction with the California State University and the University of California, shall develop discipline-based agreements with as many campuses of the two university segments as feasible, and no fewer than three University of California campuses and five California State University campuses. The development of these agreements shall be the mutual responsibility of all three segments, and no one segment should bear the organizational or financial responsibility for accomplishing these goals. [¶] [4] The Chancellor of the California Community Colleges and the President of the University of California shall begin the process of setting priorities to determine which community colleges will receive first attention for the development of agreements. Criteria for priority determination shall include, but not be limited to, the percentage and number of students from economically disadvantaged families and underrepresented

30

racial and ethnic minorities, and community colleges which traditionally have not transferred many students to the University of California. The priority list shall be completed by March 1, 1992. These considerations shall not be used in any way to displace current agreements between any community college and the University of California or the California State University. [¶] [5] The Chancellor of the California Community Colleges and the Chancellor of the California State University system shall begin the process of setting priorities to determine which community colleges will receive first attention for the development of agreements. Criteria for priority determination shall include, but not be limited to, the percentage and number of students from economically disadvantaged families and underrepresented racial and ethnic minorities, and community colleges which traditionally have not transferred many students to California State Universities. The priority list shall be completed by March 1, 1992. These considerations shall not be used in any way to displace current agreements between any community college and the University of California or the California State University."[6] (Ed. Code, § 66740.)

The Commission concluded that paragraphs 2, 4 and 5 of Education Code section 66740 does not impose any state mandated activities on California community college districts. We agree with the Commission. Paragraph 2 does not designate a particular entity to provide the information referenced in that paragraph, and it does not say how such information should be communicated. While community colleges might be in a better position to communicate with their counselors, faculty and students, the universities are arguably in a better position to know which majors are impacted or over-subscribed, the prescribed course of study and minimum grade point average required for consideration for upper division admission, whether the prescribed course of study is

---

[6] The Commission's statement of decision incorrectly split paragraph 3 into two paragraphs and stated that Education Code section 66740 had six paragraphs.

31

altered by the university department, and the deadline for application to that major and implementation by the department responsible for teaching that major.  Paragraphs 4 and 5 do not require any action by community college districts.

The Community Colleges further argue that the state must reimburse them for costs incurred as a result of Education Code sections 66741 and 66743.

Education Code section 66741 provides, "As a result of systemwide and interinstitutional agreements, each community college student shall be assured of the opportunity to enter into a transfer agreement program enabling a student to receive high priority consideration, attain equivalent special treatment, or enter into a contract when applying for university admission at the advanced standing level.  It is recognized that eligibility for transfer agreement programs will require completion of certain requirements as defined in interinstitutional agreements.  It is also recognized that access to majors of choice will, in most cases, require completion of additional requirements, such as specialized coursework and attainment of a specialized grade point average.  [¶] Transfer agreement programs also shall carry high priority access to majors of choice. The University of California and the California State University shall require that continuing undergraduate students and community college transfer students are assessed against a common set of criteria for upper division standing to a specific major. However, generally speaking, access to these programs shall require completion of specialized coursework and attainment of a grade point average above the minimums defined in general admission requirements, such as those used in supplementary admission criteria for impacted or over-subscribed programs.  [¶]  Alternatively, students may also, by meeting the University of California or California State University requirements for admission at the advanced standing level, simply wish to apply as required.  All students meeting these admission requirements shall be guaranteed a place somewhere in the University of California or California State University system, as appropriate."

32

Education Code section 66743 asks the California Postsecondary Education Commission to prepare "reports to the Governor and the Legislature on the status of transfer policies and programs, the diligence of each segment's board, and the effectiveness of these programs in meeting the [S]tate's goals for transfer." The statute describes the information such reports must include.

Education Code sections 66741 and 66743 do not require community college districts to engage in any activity. Accordingly, the Community Colleges are not entitled to subvention based on those statutes.

II

The Community Colleges further argue that the Commission erred in concluding that other test claim regulations did not impose state mandates for which subvention by the state is required.

1.      Certificates of Achievement

Santa Monica Community College District sought reimbursement of costs incurred under former regulations 55808 and 55809.

Former regulation 55808 provided, "The governing board of a community college district shall issue a certificate of achievement to any student whom the governing board determines has completed successfully any course of study or curriculum for which a certificate of achievement is offered." Former regulation 55809 provided, in relevant part, "The governing board of a community college district shall award the appropriate diploma, degree or certificate whenever a student has completed all requirements for the degree, diploma or certificate without regard to the length of time actually taken by the student to complete such requirements."

The Commission denied the claim brought by Santa Monica Community College District, reasoning that although community colleges were required to issue degrees, they were not required to offer courses that lead to a certificate. The Community Colleges assert that the Commission's determination ignored the mandatory language of former

33

regulations 55070 and 55072. But we do not address the arguments relating to former regulations 55070 and 55072 because the Community Colleges did not identify those regulations in their test claims. (Gov. Code, §§ 17551, subd. (a), 17553, subd. (b) [test claim must identify the specific sections of statutes or regulations alleged to contain a mandate]; *Grossmont Union High School Dist. v. State Dept. of Education* (2008) 169 Cal.App.4th 869, 884 (*Grossmont Union High School Dist.*).) Absent those regulations, the Community Colleges have not established that former regulations 55808 and 55809, or any other law properly before us, required community college districts to offer courses leading to certificates of achievement. Accordingly, we reject this portion of the claim.

The Community Colleges further challenge the Commission's conclusions regarding pages A-1 to A-54 of the Chancellor's Program and Course Approval Handbook. We reject the claim as it was made in a perfunctory fashion without analysis. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Freeman, supra,* 8 Cal.4th at p. 482, fn. 2 [a reviewing court need not discuss claims that are insufficiently developed].)

2. Vocational Education Contracts

Santa Monica Community College District sought reimbursement of costs incurred pursuant to former regulations 55602, 55602.5, 55603, 55605, 55607, 55620 and 55630, relating to vocational education contracts, which are agreements between a community college district and a qualified private post-secondary school to provide vocational instruction to community college students. (Cal. Code Regs., tit. 5, former § 55600, subds. (a), (c).) The test claim also cited former regulation 55600, which contained definitions of terms. The Commission denied the claim, concluding the former regulations authorized, but did not require, community college districts to enter into contracts for the provision of vocational skills training.

Former regulation 55602 provided in part, "Any community college district or districts may contract with a private post secondary school authorized or approved pursuant to the provisions of chapter 3 (commencing with section 94300) of part 59 of

34

the Education Code and which has been in operation not less than two full calendar years prior to the effective date of such contract to provide vocational skill training authorized by the Education Code. Any community college district may contract with an activity center, work activity center, or sheltered work shop to provide vocational skill training authorized by the Education Code in any adult education program for substantially handicapped persons operated pursuant to subdivision (e) of section 41976 of the Education Code."

Former regulation 55602.5 provided, "Notwithstanding any provision in the Education Code to the contrary, the governing board of a community college district and a proprietary or nonprofit organization, a public entity, or a proprietary or nonprofit private corporation may enter into a contract for the education of community college students whose capacity to function is impaired by physical deficiency or injury in vocational education classes to be conducted for such students by the proprietary or nonprofit organization, the public entity, or the proprietary or nonprofit private corporation maintaining the vocational education classes."

Former regulations 55603 and 55605 set forth further requirements for vocational education training and contracts. Former regulation 55607 required a community college district which entered into a contract with a contractor pursuant to Education Code section 55602 to submit statistical and evaluative reports to the Chancellor. Regulation 55620 describes the conditions used to determine the appropriateness of vocational education contracts with contractors. And former regulation 55630 listed the provisions that must be included in a vocational education contract.

Community colleges are required to offer vocational instruction at the lower division level. (Ed. Code, § 66010.4, subd. (a)(1).) However, under the above enumerated regulations, a community college district *may*, but is not required to, contract with a third party to provide vocational training. (Cal. Code Regs., tit. 5, former §§ 55602, 55602.5.) Because any increased costs the community college districts

35

incurred as a result of their election to enter into third party contracts pursuant to former regulation 55600 et seq. was not mandated by the state, subvention is not required. (*Department of Finance v. Commission on State Mandates, supra,* 170 Cal.App.4th at pp. 1358, 1365-1366, 1368, *City of Merced, supra,* 153 Cal.App.3d at pp. 782-784.)

The Community Colleges further contend that the same analysis applicable to vocational education contracts requires subvention of funds for costs incurred pursuant to former regulation 55170, which related to contract education. We reject this perfunctorily-made claim. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Freeman, supra,* 8 Cal.4th at p. 482, fn. 2 [a reviewing court need not discuss claims that are asserted perfunctorily and insufficiently developed].)

3.     Distance Learning and Independent Study

Santa Monica Community College District sought reimbursement of costs incurred under former regulations 55205 through 55219 (distance education) and former regulations 55300, 55316, 55316.5, 55320 through 55322, 55340 and 55350 (independent study). The Commission denied the claim on the ground that community college districts were not required to offer instruction using distance education or independent study. We agree with the Commission.

While the state encourages distance education, which is instruction in which the pupil and instructor are in different locations and interact through communications technology, it did not require California community colleges to offer distance education. (Ed. Code, §§ 51865, 66940; Cal. Code Regs., tit. 5, former § 55205; Stats. 2000, ch. 467, § 3 [Ed. Code, former § 66941].) A community college district must comply with the requirements in former regulations 55205 through 55219 only if it elected to offer distance education. (Cal. Code Regs., tit. 5, former § 55205.)

With regard to independent study, Education Code former section 78310 provided that the governing board of a community college *may* establish courses and programs conducted as independent study, and such courses and programs shall be conducted in

36

accordance with the rules and regulations of the board of governors. (Stats. 1981, ch. 470, § 163.) That statute was repealed in 1995 (Stats. 1995, ch. 758, § 107) and no current statute specifically authorizes independent study for California community colleges. The independent study regulations (Cal. Code Regs., tit. 5, former §§ 55300-55360) cited Education Code sections 70901 and 70902, which do not contain a mandate to provide independent study. Former regulation 55300 et seq. stated the requirements governing independent study courses, but likewise did not require community college districts to establish or maintain independent study courses or programs. We need not consider the Community Colleges' assertion that they were required to use distance learning or independent study if faculty decided such methodologies were in the best interests of the student because the Community Colleges do not cite any authority supporting their contention. (*Okasaki v. City of Elk Grove* (2012) 203 Cal.App.4th 1043, 1045, fn. 1.)

As with the voluntary programs in *Kern,* the state did not require the Community Colleges to provide distance education or independent study courses or programs. And there is no showing that community college districts had no choice but to provide such courses or programs. Accordingly, any increased costs associated with distance education or independent study courses or programs were not the result of a state mandate and are not reimbursable under Section 6. (*Kern, supra,* 30 Cal.4th at pp. 744-745, 751-754.)

4.     Credit/No-Credit Option for Grading

Santa Monica Community College District sought reimbursement of costs pursuant to former regulation 55752. The Commission denied the claim on the ground that former regulation 55752 did not require the governing board of a community college district to offer courses on a credit/no-credit basis. Citing Education Code section 66010.4, subdivision (a)(2)(B), the Community Colleges argue that former regulation

37

55752 created a state mandate because Education Code section 66010.4 requires community college districts to provide no-credit courses.

Former regulation 55752 provided, "(a) The governing board of a district maintaining a community college may by resolution and regulation offer courses in either or both of the following categories and shall specify in its catalog the category into which each course falls: [¶] (1) Courses wherein all students are evaluated on a "credit-no credit" basis. [¶] (2) Courses wherein each student may elect on registration, or no later than the end of the first 30% of the term, whether the basis of evaluation is to be "credit-no credit" or a letter grade. [¶] (b) All units earned on a "credit-no credit" basis in accredited California institutions of higher education or equivalent out-of-state institutions shall be counted in satisfaction of community college curriculum requirements. [¶] (c) Units earned on a "credit-no credit" basis shall not be used to calculate grade point averages. However, units attempted for which "NC" (as defined in [former regulation] 55758) is recorded shall be considered in probation and dismissal procedures. [¶] (d) Independent study courses offered in accordance with [former regulations] 55300-55352 of this part may be graded on a "credit-no credit" basis in accordance with subdivision (a) of this [regulation]. [¶] (e) When a district offers courses in which there is a single standard of performance for which unit credit is assigned, the "CR/NC" grading system shall be used to the exclusion of other grades. Credit shall be assigned for meeting that standard, no credit for failure to do so."

Education Code section 66010.4, subdivision (a)(2)(B) requires California community colleges to provide "adult noncredit education curricula in areas defined as being in the state's interest." However, the claimants did not seek reimbursement pursuant to that statute. As relevant here, they sought reimbursement pursuant to former regulation 55752. Former regulation 55752 used the word "may." It did not require a community college district to use a credit/no-credit grading system and it did not require a community college district to provide "adult noncredit education curricula." The

38

claimants do not cite any test claim statute or regulation requiring community college districts to offer credit/no-credit courses. We reject this portion of the claim because the Community Colleges fail to demonstrate that former regulation 55752 created state-mandated costs.

5. Credit by Examination

The claimants sought reimbursement for costs pursuant to former regulation 55753. The Commission denied the claim, concluding that the regulation did not require community college districts to offer credit by examination.

Former regulation 55753 provided, in relevant part, "(a) The governing board of each community college district shall adopt and publish procedures and regulations pertaining to credit by examination in accordance with the provisions of this Subchapter. [¶] (b) The governing board may grant credit to any student who satisfactorily passes an examination approved or conducted by proper authorities of the college."

We have found no provision of the Education Code requiring community college districts to provide credit by examination. Former regulation 55753 did not require the provision of such service. And the Community Colleges do not cite any authority requiring them to grant credit to a student based on passing an examination. Because there appears to be no underlying program compelled by the state, we reject the claim for subvention based on former regulation 55753.

6. Grade Changes, Course Repetition and Renewal without Repetition

The claimants sought subvention pursuant to former regulations 55760, 55761 and 55764. The Commission denied the claim, concluding the regulations did not require community college districts to permit the repetition of courses or the alleviation of previously recorded substandard academic performance not reflective of a student's demonstrated ability.

Former regulation 55760 provided, "(a) In any course of instruction in a community college district for which grades are awarded, the instructor of the course

39

shall determine the grade to be awarded each student in accordance with [former regulation 55758]. The determination of the student's grade by the instructor shall be final in the absence of mistake, fraud, bad faith, or incompetency. Procedures for the correction of grades given in error shall include expunging the incorrect grade from the record. [¶] (b) The governing board of a district shall adopt and publish procedures and regulations pertaining to the repetition of courses for which substandard work has been recorded in accordance with [former regulations] 55761 and 55762. When grade changes are made in accordance with these [regulations], appropriate annotations of any courses repeated shall be entered on the student's permanent academic record in such a manner that all work remains legible, insuring a true and complete academic history."

Former regulation 55761 provided, in part, "The governing board of a district maintaining a community college shall adopt and publish procedures or regulations pertaining to the repetition of courses for which substandard work has been recorded. . . . When course repetition occurs, the permanent academic record shall be annotated in such a manner that all work remains legible, insuring a true and complete academic history."

Former regulation 55764 provided in part, "The governing board of a district maintaining a community college shall adopt and publish procedures or regulations pertaining to the alleviation of previously recorded substandard academic performance, as defined in [former regulation] 55761, which is not reflective of a student's demonstrated ability. Such procedures or regulations shall include a clear statement of the educational principles upon which they are based, and shall be referred to as academic renewal regulations."

Former regulations 55760 and 55764 were adopted in part pursuant to Education Code section 76224. (Notes to Cal. Code Regs., tit. 5, former §§ 55760, 55764.) Like former regulation 55760, Education Code section 76224 provides that in the absence of mistake, fraud, bad faith or incompetency, the grade the instructor gives a community college student shall be final. The statute indicates that a community college district

40

must allow for grade changes when there is mistake, fraud, bad faith or incompetency. But we do not interpret the statute to impose a similar requirement when it comes to course repetitions or academic renewal referenced in former regulations 55761 and 55764. Accordingly, former regulation 55760 imposed a requirement on a community college district in connection with an underlying program legally compelled by the state, but the same is not true for former regulations 55761 and 55764. We will direct the trial court to remand the portion of the claim involving former regulation 55760 to the Commission for further determination, but we reject the portions of the claim pertaining to former regulations 55761 and 55764.

 7. Community Service Classes

Santa Monica Community College District sought reimbursement of costs pursuant to former regulation 55000 et seq., which in relevant part related to community service classes. The Commission denied the claim on the ground that Education Code section 66010.4 authorized but did not require community colleges to offer community service classes. The Community Colleges argue the Commission erred in so concluding.

The governing board of a community college district may, without the approval of the state Board of Governors of the California community colleges, establish and maintain community service classes. (Ed. Code, § 78300, subd. (a); Cal. Code Regs., tit. 5, former § 55160, subd. (a).) "The provision of community services courses and programs is an authorized function of the community colleges so long as their provision is compatible with an institution's ability to meet its obligations in its primary missions." (Ed. Code, § 66010.4 subd. (a)(2)(C).) But neither the Education Code nor the regulations require community college districts to provide community service classes. (Ed. Code, §§ 66010.4, 783005; Cal. Code Regs., tit. 5, former §§ 55001, 55002, 55006, 55160.) Because the state did not require community college districts to offer community service classes, subvention of funds by the state is not required.

41

8. Approval of Previously Deleted Courses

Santa Monica Community College District sought reimbursement of costs pursuant to former regulation 55182, relating to reinstatement of courses eliminated as a result of cuts in the Budget Act of 1982. The Commission denied the claim, concluding that community college districts were not required to comply with former regulation 55182 and were authorized but not required to reinstate deleted courses.

Former regulation 55182 provided in relevant part, "The governing board of a community college district may reinstate any course which was deleted from the credit or noncredit curriculum during the 1982-83 fiscal year, in response to provision Number 11 of Item 6870-101-001 of the Budget Act of 1982 (Chapter 326, Statutes of 1982); provided that the following criteria and procedures shall be applied in conjunction with such reinstatement . . . ."

Former regulation 55182 used the word "may." It authorized the governing board of a community college district to reinstate a course deleted during the 1982-1983 fiscal year in response to budgetary cuts, but it did not mandate reinstatement of deleted courses. We have not found, and the Community Colleges do not cite, any statute requiring such reinstatement. Accordingly, we reject this portion of the claim relating to former regulation 55182.

9. Conversion of Noncredit Courses to Credit

Santa Monica Community College District sought reimbursement of costs pursuant to former regulation 55807. The Commission denied the claim, finding that former regulation 55807 did not require a community college to count noncredit courses toward an associate degree. The Community Colleges contend the conclusion is error.

Former regulation 55807 provided, "Upon student petition to and certification by a governing board of credit-level achievement and prescribed academic rigor, and evidence of prescribed competence as approved by the faculty, noncredit courses may count toward associate degrees."

42

Former regulation 55807 used the word "may." We have not found, and the Community Colleges do not cite, any statute requiring community college districts to count noncredit courses toward an associate degree. Because there appears to be no underlying program compelled by the state, we reject this portion of the claim relating to former regulation 55807.

10. Open Course Description

The claimants sought reimbursement of costs pursuant to regulation 58102. Regulation 58102 provides, "The description of each course shall be clear and understandable to the prospective student and shall be published in the official catalog, and/or schedule of classes, and/or addenda. [¶] A course description may indicate that the course is designed to meet certain specialized needs. If so indicated, the availability of the course to all qualified students must also be affirmed."

The Commission denied the claim in part, concluding the second and third sentences of regulation 58102 did not require community college districts to indicate that a course was designed to meet specialized needs, and the requirement to affirm the availability of the course to all qualified students did not arise until a community college district decided to indicate that a course met specialized needs. The Community Colleges now argue the Commission erred in concluding that the regulation does not require them to include in course descriptions that certain courses are available to students with special needs.

The second sentence of regulation 58102 used the word "may," and the third sentence was dependent on application of the second sentence based on the words "[i]f so indicated . . . ." Those sentences did not require a course description to indicate that the course was designed to meet certain specialized needs, and the Community Colleges do not cite any other authority requiring such a statement in the course description. Under the circumstances, subvention by the state is not required for this portion of the claim.

43

11.     Release of Directory Information

Los Rios Community College District sought subvention for costs pursuant to former regulation 54626.  The Commission rejected the claim, focusing on the permissive word "may" in subdivisions (b) and (c).  The Community Colleges argue the Commission failed to give proper weight to the mandatory language in subdivision (a).

Former regulation 54626 provided, "(a) Community college districts shall adopt a policy identifying any of the following categories of directory information which may be released:  student's name, address, telephone number, date and place of birth, major field of study, class schedule, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, degrees and awards received, [and] the most recent previous public or private school attended by the student. [¶]  (b) Directory information, as established by the local governing board, may be released as to any student or former student currently attending the community college, provided that public notice is given at least annually of the categories of information which the district plans to release and of the recipients.  Such notice shall also specify the period of time within which the student must inform the district in writing that such personally identifiable information is not to be designated as directory information with respect to that student.  No directory information shall be released regarding any student or former student when the student or former student has notified the school in writing pursuant to procedures established by the district that such information shall not be released.  [¶]  (c) Other information may be added to the categories set forth in subsection (a) of this [regulation], provided that release of such information shall be authorized in writing by the student.  [¶]  (d) Any district may, in its discretion, limit or deny the release of specific categories of directory information to any public or private nonprofit organization based upon a determination of the best interests of students.  The names and addresses of students may be provided to a private school or college operating under the provisions of Division 10 of the Education Code, or its authorized representative,

44

provided, however, that no such private school or college shall use such information for other than purposes directly related to the academic or professional goals of the institution."

Former regulation 54626, subdivision (b) is based on Education Code section 76240, subdivision (c) which provides that "[d]irectory information may be released according to local policy as to any former student or any student currently attending the community college. However, public notice shall be given at least annually of the categories of information that the district plans to release and of the recipients. No directory information shall be released regarding any student or former student when the student or former student has notified the institution that the information shall not be released." The requirements in Education Code section 76240, subdivision (c) and former regulation 54626, subdivision (b) applied only if a community college district elected to release information it had designated as directory information. As for former regulation 54626, subdivision (c), no activity by the community college districts was required.

Nevertheless, we agree with the Community Colleges that former regulation 54626, subdivision (a) required the Community Colleges to adopt a policy. And, as we explain in part III *post*, reimbursement by the state is required.

12.     Open Programs and Courses

Santa Monica Community College District sought subvention under regulation 58107 and former regulation 58108, relating to open programs and courses. The Commission denied the claim, concluding that the regulations prohibited a community college district from engaging in certain activities but did not require any activity by a community college district. The Community Colleges argue the test claim regulations contained state mandates.

Regulation 58107 provides, "Notwithstanding any other provision of law, no public funds shall be used in connection with athletic programs conducted under the

45

auspices of a community college district governing board or any student organization within the district, which do not provide facilities and opportunities for participation by both sexes on an equitable basis. Facilities and opportunities for participation include, but are not limited to, equipment and supplies, scheduling of games and practice time, compensation for coaches, travel arrangements, per diem, locker rooms, and medical services."

Former regulation 58108 provided, "Procedures for registration and standards for enrollment in any course shall be only those which are consistent with these and other [regulations] of Title 5 and uniformly administered by appropriately authorized employees of the district. [¶] Except as otherwise provided by state law, no student shall be required to confer or consult with or be required to receive permission to enroll in any class from any person other than those employed by the college in the district. [¶] Students will not be required to participate in any preregistration activity not uniformly required; nor shall the college or district allow anyone to place or enforce nonacademic requisites as barriers to enrollment in or the successful completion of a class. [¶] No registration procedures shall be used that result in restricting enrollment to a specialized clientele. [¶] The following registration procedures are permissible: special registration assistance to the handicapped or disadvantaged student as defined by statute, for the purpose of providing equalization of educational opportunity; and enrollment of students in accordance with a priority system established pursuant to legal authority by the local board of trustees. [¶] With respect to accessibility to off-campus sites and facilities, no student is to be required to make any special effort not required of all students to register in any class or course section. Once enrolled in the class, all students must have equal access to the site."

The Community Colleges argue that although the regulations are couched in prohibitory language, the Commission disregarded the activities required to ensure that prohibited acts do not occur. But the argument is asserted in a perfunctory fashion and

46

the Community Colleges do not identify the activities required. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Freeman, supra,* 8 Cal.4th at p. 482, fn. 2.) Under the circumstances, this portion of the claim fails.

13. Grade Point Calculation

Santa Monica Community College District's test claim is also based on former regulation 55758.5. Applying the same reasoning it used with regard to regulation 58107 and former regulation 58108, the Commission concluded that subdivision (b) of former regulation 55758.5 contained a prohibition but did not require community college districts to engage in any activity.

Former regulation 55758.5, subdivision (b) provided, "In calculating students' degree applicable grade point averages, grades earned in nondegree credit courses shall not be included." The Community Colleges argue this prohibitory language implies a mandatory duty, but once again their discussion is perfunctory and lacks details in support of their argument. This portion of the claim fails.

14. Provision of Instructional and Other Materials by Students

Los Rios Community College District sought subvention for costs incurred under former regulation 59404. The Commission found that former regulation 59404 and Education Code section 76365 required a community college district to adopt policies or regulations only when the district required students to provide instructional and other materials, and thus the regulation did not impose a state-mandated new program or higher level of service subject to Section 6.

The Community Colleges now argue reimbursement is appropriate for costs associated with adopting or implementing procedures under former regulations 59400 through 59408. But the claimants did not identify former regulations 59400 to 59402 and 59406 to 59408 in their test claims. We do not consider the appellate claim relating to regulations not pleaded in the *Minimum Conditions for State Aid* test claim and, therefore, not decided by the Commission because subvention under such regulations is

47

not properly before us.  (Gov. Code, §§ 17551, subd. (a), 17553, subd. (b) [test claim must identify the specific sections of statutes or regulations alleged to contain a mandate]; *Grossmont Union High School Dist., supra,* 169 Cal.App.4th at p. 884.)

Former regulation 59404 provided, "(a) The governing board of a community college district which requires that students provide instructional or other materials for a course shall adopt policies or regulations, consistent with the provisions of this Subchapter, which specify the conditions under which such materials will be required. [¶]  (b) The policies or regulations specified in Subsection (a) shall be adopted no later than January 1, 1986, forwarded to the Chancellor's Office upon adoption, and thereafter published in each college catalog developed after the date of adoption."

Although the Legislature did not intend for community college districts to provide to students all materials, textbooks, equipment and clothing necessary for each course and program (Ed. Code, § 76365), we have not identified, and the Community Colleges have not cited, any statute or regulation requiring community college districts to obligate students to provide course or program materials.  Education Code section 76365, upon which former regulation 59404 was in part based, recognizes that community college districts have the authority to require students to provide instructional materials, but it does not compel that choice.  Former regulation 59404 only applies to a community college district if it chooses to impose such a requirement on students.  For this portion of the claim, there is no state mandate for which reimbursement by the state is required.

III

The Community Colleges argue the Commission erred in concluding that although regulation 54626, subdivision (a) imposed legally-compelled requirements on the Community Colleges, those requirements did not involve a new program or higher level of service.

To determine whether a test claim regulation or statute mandates a new program or higher level of service, we compare the requirements in the test claim regulation or

48

statute with the preexisting scheme. (*San Diego Unified School Dist. v. Commission on State Mandates* (2004) 33 Cal.4th 859, 878.) The requirements in a test claim regulation or statute are new if they did not exist prior to the enactment of the test claim regulation or statute. (*Ibid.*; *County of San Diego v. State of California* (1997) 15 Cal.4th 68, 75, 98; *Lucia Mar, supra*, 44 Cal.3d at p. 835; *County of Los Angeles v. Commission on State Mandates* (2003)110 Cal.App.4th 1176, 1189.) But there is an additional aspect to the analysis. Reimbursable costs are limited to increased costs a community college district is required to incur after July 1, 1980 as a result of a statute or regulation enacted on or after January 1, 1975. (Gov. Code, §§ 17514, 17516, 17519; *Hayes, supra*, 11 Cal.App.4th at p. 1581.)

The Commission determined that former regulation 54626, subdivision (a) did not involve a new program or higher level of service because the governing statute, Education Code section 76240, already imposed those requirements. However, the statute to first impose those requirements, Education Code former section 25430.12, was enacted in September 1975.[7] (Stats. 1975, ch. 816, § 7; cf. Ed. Code, § 76240, subd. (a)(1).) We have not found, and the parties do not cite, a predecessor statute on this subject predating 1975. Thus, former regulation 54626, subdivision (a) implemented a statute enacted after January 1, 1975 that mandated a new program. Costs incurred

---

[7] The Commission says the claimants did not plead Education Code former section 25430.12 in their test claim and reimbursement is not required when a statute is not pleaded in the test claim. It is true that a test claim must identify the specific statute or regulation alleged to impose a mandate. (Gov. Code, § 17553, subd. (b)(1); Cal. Code Regs., tit. 2, former § 1183, subd. (d)(1).) Los Rios Community College District's test claim cited former regulation 54626, subdivision (a) but did not cite the related Education Code sections. Nevertheless, in its statement of decision the Commission acknowledged that former regulation 54626 implemented Education Code section 76240 which was originally enacted as Education Code section 25430.12, and the Commission considered whether former regulation 54626 constituted a new program in light of those Education Code sections. We do the same.

pursuant to former regulation 54626, subdivision (a) are subject to subvention by the state.  (Gov. Code, § 17516.)

During oral argument, the Commission urged that subvention cannot be required because the Commission did not address whether the claimants incurred increased costs mandated by the state.  We do not consider the argument because it was not raised in the appellate briefs.  (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 56.)

IV

The Community Colleges also contend the parameters and guidelines issued by the Commission did not include all costs reasonably necessary to perform the state mandated activity.

The Commission must determine the amount to be reimbursed to community college districts and adopt parameters and guidelines for reimbursement.  (Gov. Code, §§ 17516, 17519, 17557, subd. (a).)  The parameters and guidelines must describe the reimbursable costs, including one-time costs and on-going costs, and the most reasonable methods of complying with the mandate.  (Cal. Code Regs., tit. 2, former § 1183.1.) " 'The most reasonable methods of complying with the mandate' are those methods not specified in statute or executive order that are necessary to carry out the mandated program."  (Cal. Code Regs., tit. 2, former § 1183.1, subd. (a)(4).)  The Commission adopts the parameters and guidelines following an opportunity for review and comment and a hearing.  (Cal. Code Regs., tit. 2, former §§ 1183.11, 1183.12, 1183.14.)

The Community Colleges argue that although the parameters and guidelines allowed the costs of establishing a policy or procedure, the parameters and guidelines failed to (1) allow for the costs of ongoing implementation, (2) include all activities listed in certain statutes and regulations, and (3) conform to the Commission's statement of decision.  We address each argument in turn.

A

In arguing that the parameters and guidelines failed to allow for the costs of ongoing implementation, the Community Colleges reference the procedures required pursuant to Education Code sections 70902, subdivision (b)(7) and 66010.2, subdivision (b), along with former regulation 55002, subdivisions (a)(4), (b)(4) and (c)(3).

The Commission found that Education Code section 70902, subdivision (b)(7) imposed a state-mandated new program or higher level of service subject to subvention under Section 6. Education Code section 70902, subdivision (b)(7) required the governing board of each community college district to "[e]stablish procedures that are consistent with minimum standards established by the board of governors to ensure faculty, staff, and students the opportunity to express their opinions at the campus level, to ensure that these opinions are given every reasonable consideration, to ensure the right to participate effectively in district and college governance, and to ensure the right of academic senates to assume primary responsibility for making recommendations in the areas of curriculum and academic standards." Although the Commission allowed for costs to "establish" the procedures as provided in the statute, the Community Colleges argue that because the word "ensure" is also used in the statute, costs for ongoing implementation must also be provided. But the word "ensure" is only used in the statute to describe the purpose of the procedure that must be established; we do not read the statute as imposing the kind of ongoing implementation responsibilities suggested by the Community Colleges. Because Education Code section 70902, subdivision (b)(7) only requires a community college to "establish" the designated procedures, the contention fails as to that statute.

In addition, the record does not support the Community Colleges' claim regarding Education Code section 66010.2, subdivision (b), which required community colleges to "provide all students the opportunity to address issues, including ethical issues, that are

51

central to their full development as responsible citizens." (Stats. 1991, ch. 1198, § 4.2.) The Commission transferred this portion of the claim from the *Discrimination Complaint Procedures* test claim to the parameters and guidelines for the *Minimum Conditions for State Aid* test claim. The Commission agreed with the Community Colleges that the activity of providing students the opportunity to address issues in community college programs is reimbursable and it allowed reimbursement for that *ongoing* activity. Thus, the Commission did not deny the costs of ongoing implementation in connection with Education Code section 66010.2, subdivision (b).

As for former regulation 55002, subdivisions (a)(4), (b)(4) and (c)(3), the Commission concluded that activities required by former regulation 55002 constituted state mandated activities as they applied to associate degree credit courses, nondegree credit courses and noncredit courses, but not community service classes. The Commission said the requirement in subdivisions (a)(4), (b)(4) and (c)(3) that each section of an associate degree course, nondegree course or noncredit course be taught by a qualified instructor in accordance with a set of objectives and with other specifications defined in the course outline of record constituted state mandated activities. The parameters and guidelines subsequently indicated that reimbursement for costs associated with subdivisions (a)(4), (b)(4) and (c)(3) did not include reimbursement for the process required to determine that an instructor is qualified and also did not include the cost of course instruction. However, the Community Colleges do not explain why the Commission's specific rationale is erroneous, saying only that the Commission applied the "same flawed" reasoning. Accordingly, we reject their undeveloped claim. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Freeman, supra*, 8 Cal.4th at p. 482, fn. 2.)

B

In arguing that the parameters and guidelines failed to include all activities listed in certain statutes and regulations, the Community Colleges claim the Commission should have read Education Code section 70902, subdivision (b)(7) and regulations

52

51023.5 and 51023.7 together and included the activities listed in those regulations in the parameters and guidelines.  The claim fails, however, because the parameters and guidelines adequately include the activities listed in Education Code section 70902, subdivision (b)(7) and regulations 51023.5 and 51023.7.

The Community Colleges further urge that the parameters and guidelines made the same error with regard to Education Code sections 66736 and 66738.  But the Community Colleges fail to identify the regulations implementing Education Code sections 66736 and 66738 and do not explain how the parameters and guidelines omit the state mandated activities set forth in those regulations.  We are not required to examine undeveloped claims.  (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785; *Maral v. City of Live Oak* (2013) 221 Cal.App.4th 975, 984-985.)

C

In addition, the Community Colleges argue the parameters and guidelines failed to conform to the Commission's statement of decision.

In its statement of decision, the Commission determined that regulation 55202, subdivision (e) included the following state mandated activity:  offering sufficient sections of a corequisite course to reasonably accommodate all students who are required to take the corequisite.  The subsequent parameters and guidelines indicated that the cost of offering a corequisite course and the cost associated with teacher time for such course were not reimbursable because the State did not require community college districts to provide any specific corequisite course; a community college district determines the corequisite courses it offers.

In their Appellant's Opening Brief, the Community Colleges merely repeat the language from the statement of decision and assert that the parameters and guidelines must be consistent with the underlying mandate decisions.  But they do not discuss the alleged inconsistency in any detail and do not develop their argument.  Accordingly, we

reject the claim.  (Cal. Rules of Court, rule 8.204(a)(1)(B); *Freeman, supra,* 8 Cal.4th at p. 482, fn. 2.)

V

Finally, the Community Colleges contend the Commission failed to address the test claim relating to repeatable courses and minimum requirements for Associate in Arts degrees.  Based on their description and citation to the record, it appears the Community Colleges are arguing that the Commission did not decide the test claim with regard to former regulations 55763 and 55800.5.  The Commission says the Community Colleges are referring to regulations 55041 and 55063, but those regulations are not cited in the test claims.  The Commission decided the test claim relating to former regulation 55800.5.  Although the Commission refers to former regulation 55763 in a heading in its Statement of Decision, it did not discuss that regulation.  The Commission must decide the test claim relating to former regulation 55763 in the first instance.  (Gov. Code, § 17551, subd. (a); *Lucia Mar, supra,* 44 Cal.3d at p. 837.)

DISPOSITION

The judgment is affirmed in part and reversed in part.

The judgment is affirmed regarding Education Code sections 66738, subdivision (b), 66741, 66743, 78210 through 78218, paragraphs 2, 4 and 5 of section 66740, the portion of regulation 51008 dealing with education master plans, regulations 51002, 51004, 51012, 51021, 51022, 51023, 51023.5, 51023.7, 51024, 51027, 54626, subdivisions (b) and (c), 55005, 55100, 55130, 55150, 55170, 55182, 55205 through 55219, 55300, 55316, 55316.5, 55320 through 55322, 55340, 55350, 55500 through 55534, 55600, 55602, 55602.5, 55603, 55605, 55607, 55620, 55630, 55752, 55753, 55753.5, 55758.5, 55761, 55764, 55800.5, 55805, 55806, 55807, 55808, 55809, 58102, 58107, 58108, 59404, the portion of regulation 55000 et seq. relating to community service classes, and pages A-1 to A-54 of the Chancellor's Program and Course Approval

54

Handbook.  The Community Colleges' challenges to the parameters and guidelines are rejected.

The judgment is reversed regarding regulations 51000, 51006, 51014, 51016, 51018, 51020, 51025, 54626, subdivision (a), 55825 through 55831, regulation 55760 in cases involving mistake, fraud, bad faith or incompetency, and the Handbook of Accreditation and Policy Manual.

The trial court is directed to remand to the Commission for further determination the portions of the test claim based on Education Code sections 76300 through 76395, regulations 51006, 51014, 51016, 51018, 51020, 51025, 55760, 55763, 55825 through 55831, and the Handbook of Accreditation and Policy Manual.

The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


　　　　　　　　　　　　　　　　　　　　　　 /S/
　　　　　　　　　　　　　　　　　　　　　　 MAURO, J.



We concur:



　　 /S/
RAYE, P. J.



　　 /S/
HOCH, J.


55